LA SOCIEDAD CIVIL AGRÍCOLA E INDUSTRIAL EN COMANDITA "WIRSHING & COMPAÑÍA, S. EN C.," demandante y apelante, *v.* HON. RAFAEL A. BUSCAGLIA, como Tesorero de Puerto Rico, demandado y apelado.

Núm. 8968.—*Sometido:* Diciembre 5, 1944. *Resuelto:* Enero 9, 1945.

*Vicente Zayas Pizarro,* abogado de la apelante; *Hon. Procurador General Interino Jesús A. González* y *J. Rivera Barreras, Procurador Auxiliar,* abogados del apelado.

EL JUEZ PRESIDENTE SEÑOR TRAVIESO emitió la opinión del tribunal.

La sociedad demandante, dueña de la Central Bocachica, radicó ante la Corte de Distrito de Ponce una demanda contra el Tesorero de Puerto Rico solicitando la devolución de $1,206.33, que alegó haber pagado bajo protesta, por concepto de primas de seguro de obreros, más intereses, costas y honorarios de abogado. He aquí un resumen de los hechos esenciales alegados en la demanda:

Durante los años económicos 1940–41 y 1941–42, la demandante transportó todos sus productos a través de la firma "García Hermanos, Sucesor", contratista independiente. Éste suplía todos los vehículos y contrataba por su cuenta y riesgo los obreros y empleados encargados del manejo de dichos vehículos, sin que en ello interviniera en modo alguno la demandante. Durante esos dos años, el contratista mantuvo a los obreros y empleados contratados por él asegurados en el Fondo del Seguro del Estado, a cuyo efecto le fueron expedidas las pólizas correspondientes y se le cobraron las primas que le fueron impuestas por el Administrador.

En las nóminas presentadas al Fondo del Seguro del Estado, por los años 1940–41 y 1941–42, la demandante no incluyó los salarios pagados a los obreros o empleados que trabajaban para el contratista independiente; y tampoco los incluyó en sus nóminas para el año 1942–43, porque se proponía utilizar también durante ese año, los servicios de García Hermanos, Sucesor, como contratista independiente.

El Tesorero requirió a la demandante para que pagase las primas correspondientes a los tres años mencionados, alegando que el contratista independiente no había pagado las

correspondientes a los dos primeros años, y en cuanto al año 1942–43, el Tesorero asumió que la demandante habría de realizar la transportación por su cuenta y no a través de un contratista: Habiéndose negado la demandante a pagar dichas primas, el Tesorero le notificó que si no las pagaba se le consideraría como patrono no asegurado por el año económico 1942–43. La demandante pagó entonces, bajo protesta, al Colector de Rentas Internas de Ponce, las cuotas correspondientes a los dos primeros y al primer semestre de 1942–43 ascendentes a un total de $1,206.33.

Alega la demandante que el cobro que se le ha hecho es ilegal: (1) porque el contratista mantuvo a sus obreros asegurados en el Fondo del Estado durante los dos primeros años y pagó las primas correspondientes; (2) porque si se aceptara hipotéticamente que el contratista no pagó dichas cuotas, entonces el contratista y la demandante deberían ser declarados patronos no asegurados durante esos dos años, en cuyo caso el Departamento de Hacienda no tendría derecho a cobrar las primas, ya que el período por el cual se trata de cobrarlas ha transcurrido; (3) porque la imposición preliminar hecha por el Tesorero para el año 1942–43, es contraria a la ley, puesto que el servicio de transporte de la demandante, durante ese año, ha de efectuarse por un contratista independiente, quien asegurará a sus obreros en el Fondo del Estado; y, además, por haber la demandante interpuesto una alzada ante la Comisión Industrial en cuanto a las primas fijadas por el Administrador del Fondo para dicho año; y (4) por no existir nexo jurídico alguno entre la demandante y los obreros del contratista independiente, el cual se dedica al negocio de porteador público.

El demandado solicitó y obtuvo el traslado de la causa a la Corte de Distrito de San Juan y formuló excepción previa a la demanda, alegando que los hechos expuestos no son suficientes para determinar una causa de acción y que la corte de distrito carece de jurisdicción para conocer del caso.

En abril 28 de 1944, la corte inferior dictó sentencia declarando con lugar la excepción previa y desestimando la demanda por falta de jurisdicción. Apeló la demandante, alegando que la sentencia recurrida es errónea.

Los fundamentos de la sentencia dictada por la corte inferior son:

1. Que las primas por el seguro de obreros no son contribuciones que puedan ser pagadas bajo protesta y recobradas en una acción ordinaria de acuerdo con las disposiciones de la Ley sobre Pago de Contribuciones bajo Protesta, núm. 8 de 19 de abril de 1927 (pág. 123), según ha sido enmendada.

2. Que el procedimiento que debió seguir la demandante era el de no pagar las primas, esperar a que se le declarase patrono no asegurado, y entonces apelar para ante la Comisión Industrial, en donde tendría oportunidad de exponer las razones por las cuales no estaba legalmente obligada a pagar dichas primas; y, en último extremo, recurrir para ante la Corte Suprema si la decisión de la Comisión le fuere adversa.

Para poder resolver la cuestión jurisdiccional envuelta en este recurso, es preciso que hagamos un detenido estudio de nuestra legislación sobre pago de contribuciones bajo protesta y también de la ley que provee para el pago de indemnizaciones por accidentes del trabajo.

La sección 1 de la Ley número 8 de 19 de abril de 1927, "Disponiendo el pago de contribuciones bajo protesta", según quedó enmendada por la Ley número 17 de 21 de noviembre de 1941 ((2) pág. 55), bajo la cual se ampara la demandante, dispone que "cuando un contribuyente creyere que no debe pagar cualquier contribución o parte de ella, *excepción hecha de las contribuciones sobre propiedad, herencia e ingresos,* para el pago de las cuales existen procedimientos específicos en las leyes correspondientes", dicho contribuyente estará obligado a pagarla a requerimiento del funcionario encargado de la recaudación, pero podrá hacer el pago bajo protesta, en la forma especificada en la misma sección.

La sección 2 de la misma ley autoriza al contribuyente que ha efectuado el pago bajo protesta para demandar al Tesorero de Puerto Rico ante la corte de distrito correspondiente para obtener la devolución de la cantidad pagada bajo protesta. La misma sección dispone, que si la sentencia fuese favorable al contribuyente, "el Tesorero procederá a reintegrar la suma que se ordene en la sentencia con cargo a cualesquiera fondos disponibles en el Tesoro público".

¿Son las primas de seguro de obreros, impuestas y cobradas a un patrono de acuerdo con las disposiciones de la "Ley de Compensaciones por Accidentes del Trabajo", aprobada en 18 de abril de 1935, contribuciones que puedan ser pagadas bajo protesta y recobradas mediante acción ordinaria ante una corte de distrito, de acuerdo con lo dispuesto en la Ley núm. 8 de 19 de abril de 1927, enmendada por la Ley núm. 17 de 21 de noviembre de 1941? De la contestación que demos a esta pregunta dependerá la decisión del presente recurso.

La corte inferior opinó que de acuerdo con las leyes sobre indemnizaciones a obreros (Ley núm. 10 de 1918 [pág. 55], enmendada por la núm. 102 de 1925 [pág. 905] y la Ley núm. 85 de 14 de mayo de 1928 [pág. 631]) vigentes con anterioridad a la presente Ley núm. 45 de 18 de arbil de 1935, las cuotas o primas de seguro de obreros participaban en cuanto a su imposición y recaudación de la naturaleza de contribuciones. En efecto, los artículos 11, 12 y 13 de la "Ley de Indemnizaciones por Accidentes del Trabajo", núm. 10 de 1918, enmendados por la Ley núm. 102 de 1925, autorizaban al Tesorero de Puerto Rico para imponer, tasar y recaudar de todo patrono comprendido en la ley, semestralmente y por anticipado las cuotas anuales sobre el importe de los jornales pagados a los obreros que tuvieren derecho a los beneficios de la ley. Las cuotas debían ser ingresadas en el Tesoro Insular, en el Fondo de Depósito establecido por dicha ley. Disponía el artículo 11 que si el patrono no pagaba las cuotas dentro del plazo concedídole, el Tesorero, sin

excusa ni dilación alguna "trabará embargo sobre cualesquiera bienes del patrono y procederá al cobro de la cuota adeudada, como si del cobro de la contribución sobre la propiedad se tratare". El artículo 12 disponía que "el cobro de estas cuotas tiene carácter preferente sobre cualquier otra deuda del patrono y que la misma constituirá un gravamen sobre la propiedad del patrono tan pronto dicha cuota deje de ser satisfecha al aviso de pago". Idénticas disposiciones se encuentran en las secciones 38, 39 y 40 de la Ley núm. 85 aprobada en mayo 14 de 1928.

La "Ley de Compensaciones por Accidentes del Trabajo", núm. 45 de 18 de abril de 1935, ahora vigente, dispone bajo el capítulo "Tasación y Cobro de Primas", art. 25, que el Administrador del Fondo del Estado es el funcionario autorizado "para tasar e imponer" a los patronos cuotas anuales sobre el importe total de los jornales pagados a sus obreros durante el año anterior a la imposición de las cuotas; que la recaudación de las cuotas se llevará a cabo por el Tesorero de Puerto Rico, a través de los Colectores de Rentas; y que dichas cuotas, una vez recaudadas, serán ingresadas en el Fondo del Seguro del Estado.

La ley de 1935 ahora en vigor, por la cual quedaron derogadas todas las anteriores, no contiene disposición alguna que autorice al Tesorero de Puerto Rico a cobrar las cuotas de seguro de obreros mediante el procedimiento sumario autorizado por la ley para el cobro de contribuciones sobre la propiedad. De acuerdo con la ley, dos son los efectos legales de la falta de pago de las cuotas por un patrono comprendido dentro de las disposiciones del artículo 1, inciso 2 de la misma ley. Dispone el artículo 25 que el pago de las cuotas dentro del término señalado por el Administrador "será un requisito indispensable para que el Administrador pueda darle efectividad a cualquier póliza de seguro". El artículo 27 provee que "cualquier accidente que ocurra antes de verificarse el pago, será considerado como un caso de patrono no asegurado", a menos que el pago se verifique dentro del

plazo concedido por el Administrador, en cuyo caso el seguro empezará a regir desde la fecha del archivo de la nómina. Las responsabilidades civiles en que incurre el patrono que por dejar de pagar las cuotas debe ser considerado como "patrono no asegurado", están claramente especificadas en el artículo 15 de la ley. El artículo 17 es el que provee la sanción penal que puede imponerse al patrono que estando obligado a asegurarse dejare de hacerlo.

Otra diferencia esencial entre las contribuciones pagadas bajo protesta y las cuotas de seguro de obreros es que las primeras, si son pagadas bajo protesta, pueden ser devueltas por el Tesorero con cargo a cualesquiera fondos disponibles en el Tesoro público, mientras que las segundas, una vez satisfechas, no podrán ser extraídas del Fondo. Lo único que puede hacerse es descontar su importe de las primas que hayan de recaudarse en el futuro. Artículos 24 y 26 de la ley.

[2, 3] La corporación demandante no podía ser obligada a pagar por el Tesorero, mediante el procedimiento de apremio, pues no existe ley alguna que autorice a dicho funcionario a cobrar primas de seguro de obreros por ese procedimiento sumario. Tampoco tenía la demandante razón alguna para creer que si no pagaba las primas en cuestión el Tesorero podría declararla patrono no asegurado, pues la facultad de hacer tal declaración ha sido conferida por la ley (artículo 15) al Administrador del Fondo y no al Tesorero de Puerto Rico.

El propósito del legislador al aprobar la Ley de Compensaciones por Accidentes del Trabajo fué el de conferir jurisdicción exclusiva a la Comisión Industrial para conocer de todas las apelaciones que puedan ser interpuestas contra las decisiones dictadas por el Administrador del Fondo de Seguro del Estado. El artículo 10, que es el que concede ese derecho de apelación al obrero que no estuviere conforme con la decisión del Administrador, según fué en-

mendado por la Ley núm. 43 de 22 de abril de 1942 ((1) pág. 455), contiene la siguiente disposición:

"*Disponiéndose,* que en los casos de patronos no asegurados tanto el obrero como el patrono podrán acudir a la Comisión Industrial una vez declarado no asegurado el patrono por el Administrador, *teniendo el patrono un término de (30) días para apelar de la decisión del Administrador declarándolo no asegurado,* y el caso. podrá ser visto por la Comisión Industrial, o por uno de sus Comisionados, siguiéndose en este último caso el procedimiento que más adelante se dispone."

El artículo 11, enmendado por la Ley núm. 121 de 2 de mayo de 1940 ((1) pág. 729), concede a cualquier parte interesada el derecho a solicitar de la Corte Suprema la revisión, sobre cuestiones de derecho o apreciación de prueba pericial, de las órdenes o decisiones de la Comisión Industrial.

La jurisprudencia que hemos examinado sostiene que los tribunales de justicia no tienen jurisdicción original para conocer de las controversias que puedan surgir de la aplicación o interpretación de la Ley de Compensaciones por Accidentes del Trabajo. Cuando la ley provee, como lo hace la nuestra, el procedimiento que deberá seguirse, tanto por los obreros como por los patronos, para revisar las órdenes o decisiones del Administrador del Fondo y las resoluciones dictadas por la Comisión Industrial, ese remedio es exclusivo y ni el obrero ni el patrono pueden invocar la jurisdicción original de los tribunales ordinarios para dirimir ante ellos sus controversias. A esos tribunales sólo puede recurrirse por vía de apelación o revisión cuando el estatuto así lo disponga. Véanse: *State* v. *Olinger,* 70 P. (2d) 317; *Maddox* v. *Industrial Insurance Commission,* 119 Wash. 21, 204 Pac. 1057; *Cole* v. *Dept. of Labor and Industries,* 137 Wash. 538, 243 Pac. 7; y *Puliz* v. *Dept. of Labor and Industries,* 184 Wash., 585, 52 P. (2d) 347. Los artículos 10 y 11 de la ley, supra, marcan en términos claros y precisos el procedimiento que pudo seguir y no siguió la compañía

peticionaria. Pudo ésta aguardar a que se la declarase patrono no asegurado y apelar de esa decisión para ante la Comisión Industrial y de la resolución de la Comisión para ante esta Corte Suprema, a la cual se confiere jurisdicción para revisar los fallos de la Comisión.

Si la corporación demandante tiene o no derecho a reclamar del Administrador del Fondo del Seguro del Estado, que la cantidad que le fué exigida por el Tesorero y que ella pagó bajo protesta, le sea descontada de las cuotas o primas que hayan de serle impuestas en el futuro, es cuestión que no está ante nos en el presente recurso y por lo tanto no estamos obligados a resolverla.

Por las razones expuestas opinamos que la corte inferior no erró al sostener la excepción previa de falta de jurisdicción.

*La sentencia recurrida debe ser confirmada.*