Hipólito Rivera Ortiz, demandante y recurrido, *v.* Municipio de Guaynabo, demandante y peticionario; Rosario Luis Torres, demandante y recurrido, *v.* Municipio de Guaynabo, demandado y recurrente.

*Números:* CE-94-317      *Resueltos:* 28 de junio de 1996
          CE-94-741

258

*Juan A. Muñiz Ramos*, abogado del peticionario; *Víctor M. Rivera Torres*, de *Rivera Colón, Rivera Torres & Ríos Berly*, abogado del recurrido Hipólito Rivera Ortiz.

EL JUEZ ASOCIADO SEÑOR HERNÁNDEZ DENTON emitió la opinión del Tribunal.

Los recursos de autos requieren que determinemos si la Junta de Apelaciones para el Sistema de Administración de Personal posee jurisdicción exclusiva sobre las reclamaciones salariales de los empleados municipales, en virtud de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991. En ambos, el Municipio de Guaynabo cuestiona las decisiones del entonces Tribunal Superior de que no procedía desestimar las reclamaciones instadas al amparo del procedimiento sumario de la Ley Núm. 2 de 17 de octubre de 1961 (32 L.P.R.A. secs. 3118–3132). Revocamos.

## I

Empleados del Municipio de Guaynabo (en adelante el Municipio) presentaron querellas para la reclamación de salarios, en las cuales alegaban que el Municipio les adeudaba dinero en concepto de las horas extras, las horas de almuerzo, el séptimo día y los días feriados. En una querella un empleado reclamaba $45,911.04 y otro, $212,910.88. En la segunda querella se reclamaba la suma de $75,000.

Los empleados indicaron que se acogían al procedimiento sumario establecido en la Sec. 1 de la Ley Núm. 2, *supra*, según enmendada, 32 L.P.R.A. sec. 3118.

Después de contestar ambas querellas, el Municipio presentó una moción de desestimación en cada uno de los casos. Alegaba que procedía desestimar por razón de que los empleados municipales no habían agotado los remedios administrativos o, en la alternativa, por virtud de lo dispuesto en la Regla 10.2(1) y (5) de Procedimiento Civil, 32 L.P.R.A. Ap. III.

El tribunal de instancia denegó las mociones de desestimación por fundamentos idénticos. Dictaminó que si bien la Junta de Apelaciones del Sistema de Administración de Personal (en adelante J.A.S.A.P) es el organismo apelativo a quien corresponde atender las reclamaciones en cuestión, "por excepción a la doctrina de agotamiento de remedios y por radicarse la presente acción bajo el Código de Enjuiciamiento Civil[,] 32 L.P.R.A. secs. 3118 y ss. (1990)", procedía denegar la desestimación. Resolución de 24 de marzo de 1994, pág. 1. Según el tribunal:

> En el caso de autos, tomando como base los fundamentos esbozados en relación a el [sic] carácter sumario de las reclamaciones de salario hechas al amparo del Código de Enjuiciamiento Civil, este Tribunal entiende que el requerir que se agoten los remedios administrativos puede ser inútil debido a la dilación excesiva de los procedimientos, principio que está en total discordia con el propósito de las secciones 3118 y siguientes, bajo las cuales se radicó la presente acción. Resolución de 24 de marzo de 1994, pág. 4.

Ante nos, el Municipio aduce que el foro de instancia se equivocó, puesto que el caso debía ventilarse ante el foro administrativo y no era de aplicación al caso de autos ninguna de las excepciones dispuestas en la ley.

Por su parte, los empleados municipales sostienen que la base legal para su reclamo es la propia Constitución, Art. II, Sec. 16, L.P.R.A., Tomo 1; que J.A.S.A.P. no tiene jurisdicción primaria exclusiva en relación con una causa

de acción de un empleado municipal sobre horas extras, y que la existencia de un procedimiento sumario mediante el cual se acelera el trámite judicial en casos de salarios hace innecesario y fútil el procedimiento adjudicativo ante la agencia administrativa.

## II

Antes de discutir el problema de carácter jurisdiccional que plantea la reclamación de los empleados municipales, debemos comenzar aclarando la naturaleza propia del reclamo y el remedio —pago *en efectivo*— solicitado. En el caso de autos las reclamaciones de los empleados municipales giran en torno a la compensación por los trabajos realizados durante horas extras, horas de almuerzo y días feriados.

El derecho al pago de horas extras trabajadas tiene su sustrato fundamental en una disposición constitucional. La Sec. 16 del Art. II de la Constitución, *supra*, ed. 1982, pág. 327, dispone que "[s]ólo podrá trabajarse en exceso de este límite diario [de ocho horas], mediante compensación extraordinaria que nunca será menor de una vez y media el tipo de salario ordinario, según se disponga por ley". En el caso del sector privado, la Ley Núm. 379 de 15 de mayo de 1948, conocida como Ley sobre Horas y Días de Trabajo, 29 L.P.R.A. sec. 271 *et seq.*, regula esta materia a nivel estatutario. Sin embargo, en el ámbito público, los empleados estatales y municipales están taxativamente excluidos del alcance de la ley. 29 L.P.R.A. sec. 285.

Ya antes habíamos resuelto sobre la procedencia de un reclamo de horas extras trabajadas por un empleado municipal. En *Municipio de Guaynabo v. Tribunal Superior*, 97 D.P.R. 545, 549 (1969), dispusimos que no existe "razón alguna para que los trabajadores de los gobiernos

municipales no gocen de la protección constitucional de la jornada legal, al igual que lo goźan los trabajadores del Gobierno del Estado Libre Asociado". Más recientemente, en *Rodríguez Cruz v. Padilla Ayala*, 125 D.P.R. 486 (1990), tuvimos que atemperar lo anterior con lo resuelto en *A.D. Miranda, Inc. v. Falcón*, 83 D.P.R. 735 (1961), en el sentido de que la protección constitucional no protege a todo el que trabaja, sino a la "gran 'masa trabajadora que por razón de especial desvalimiento históricamente ha necesitado' aunque no siempre ha recibido 'protección social' ". *Rodríguez Cruz v. Padilla Ayala*, supra, pág. 521. En este último caso, el empleado municipal en cuestión dirigía y administraba una división de la Rama Ejecutiva municipal, por lo que resolvimos que no estaba protegido por lo dispuesto en la Sec. 16 del Art. II de la Constitución, *supra*.

■ Aunque los empleados municipales reclaman el pago *en dinero* de las horas extras trabajadas, tal pretensión debe atenderse a la luz de las normas sobre la concesión de beneficios dentro del sistema de personal público. En términos generales y sujeto a las disposiciones aplicables de la Ley Federal de Normas Razonables del Trabajo, 29 U.S.C. sec. 207, tanto los empleados estatales como los municipales no gozan de un derecho a recibir paga en efectivo por las horas extras trabajadas. *Autoridad de Comunicaciones v. Tribl. Superior*, 87 D.P.R. 1 (1962). En cambio, los empleados públicos tienen derecho a recibir una *licencia compensatoria* por el tiempo extra trabajado. En *Autoridad de Comunicaciones*, supra, págs. 10–11, expresamos que este tipo de reglamentación

> ... no tiene el alcance que parece atribuírsele de privar a un empleado público de reclamar horas extraordinarias por servicios prestados. Todo cuanto estatuye es una forma especial para la compensación de estas horas extras, o sea, mediante licencia compensatoria. La explicación para esta medida obedece sin duda a las obvias limitaciones presupuestales dentro de las cuales se tiene que desarrollar la obra de gobierno y a la impo-

sibilidad de predecir cuándo las necesidades del servicio público requerirán el trabajo de horas extras.

De esta manera, la licencia compensatoria constituye "una forma de pago" de las horas extras trabajadas. Por lo común, esta es la misma forma de pago que se utiliza para compensar el trabajo realizado durante días feriados o durante la hora de tomar alimentos.

## III

En su resolución, el tribunal de instancia determinó que era a J.A.S.A.P. a quien correspondía atender en primer lugar la reclamación. Parecería, entonces, que lo único que se habría de resolver es si erró al no desestimar la acción judicial y así permitir que la controversia se dilucidara a nivel administrativo. La correcta solución de la controversia de autos requiere, sin embargo, una explicación en torno a la jurisdicción del foro administrativo para adjudicar la reclamación de autos.

A. Al adoptarse en 1975 la Ley de Personal del Servicio Público de Puerto Rico, Ley Núm. 5 de 14 de octubre de 1975, según enmendada, 3 L.P.R.A. sec. 1301 *et seq.*, los municipios fueron integrados al Sistema de Administración de Personal como Administradores Individuales y, en tal carácter, se les impuso la obligación de adoptar una reglamentación que reconociera el derecho de los empleados a la compensación "por el trabajo realizado fuera de la jornada regular de trabajo". Sec. 5.14 (3 L.P.R.A. sec. 1354(6)). De igual manera, los demás aspectos relacionados al horario y la jornada de trabajo serían regulados por cada municipio. Sec. 5.17 (3 L.P.R.A. sec. 1357).

En cuanto a las controversias que pudieran surgir a raíz de lo dispuesto en los reglamentos de cada municipio, la jurisdicción apelativa correspondía a J.A.S.A.P. Sec. 7.14 (3 L.P.R.A. sec. 1394(1)). "El texto de la ley claramente establece *su jurisdicción apelativa a nivel administrativo con*

*funciones cuasi judiciales.*" (Énfasis en el original.) *Aulet v. Depto. Servicios Sociales*, 129 D.P.R. 1, 25 (1991). Bajo la Ley de Personal del Servicio Público de Puerto Rico, este foro administrativo era el llamado a revisar las acciones o decisiones de los municipios relacionadas con los reglamentos adoptados. *Díaz Marín v. Mun. de San Juan*, 117 D.P.R. 334 (1986); *Delgado Rivera v. Alcalde de Carolina*, 109 D.P.R. 5 (1979).

El esquema legal descrito sufrió variaciones al ser adoptada la Reforma Municipal en 1991. Mediante la Ley Núm. 81 de 30 de agosto de 1991, conocida como Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 (21 L.P.R.A. sec. 4001 *et seq.*), los municipios quedaron fuera del sistema de personal central. Dejaron de ser Administradores Individuales y se dio paso a la creación de un sistema autónomo para la administración del personal municipal. Art. 12.001 (21 L.P.R.A. sec. 4551). El Capítulo 12 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991 comprende todo lo concerniente al funcionamiento de un sistema de personal responsivo a las necesidades particulares y a la estructura administrativa de los municipios. A juicio de algunos, es "la legislación de recursos humanos más importante de los últimos dieciocho años". A.N. Caballero Fuentes, *El sistema de personal municipal establecido en el Capítulo XII de la Ley de Municipios Autónomos*, en L. Santana Rabell y M. Negrón Portillo, *La reforma municipal en Puerto Rico: retos y oportunidades*, Río Piedras, Escuela de Administración Pública, U.P.R., 1993, pág. 138.

Entre las disposiciones que regulan el sistema de personal municipal se presenta el derecho al disfrute de los días feriados. Art. 12.016(a), 21 L.P.R.A. sec. 4566(a). De otro lado, las horas extras y los períodos de almuerzo se rigen por lo dispuesto en cuanto a la jornada de trabajo en el Art. 12.021 (21 L.P.R.A. sec. 4571):

El municipio administrará lo relativo al horario, a la jornada

de trabajo y a la asistencia de los empleados conforme a la reglamentación que adopte. La jornada regular no excederá de ocho (8) horas diarias ni de cuarenta (40) horas semanales. Se concederá a todo empleado una (1) hora para tomar alimentos durante su jornada regular diaria.

*Cuando los empleados presten servicios en exceso de su jornada de trabajo diaria o semanal, en sus días de descanso, en cualquier día feriado o en cualquier día que se suspendan los servicios por ordenanza municipal, tendrán derecho a recibir licencia compensatoria a razón de tiempo y medio y pago en efectivo según dispuesto en la Ley federal de Normas Razonables del Trabajo.* Se podrá exceptuar de esta disposición a los empleados que realicen funciones de naturaleza asesorativa, normativa, profesional administrativa o ejecutiva. (Énfasis suplido.)

Sobre las disposiciones aplicables de la Ley Federal de Normas Razonables del Trabajo, véase 29 U.S.C. sec. 207 (Sup. 1995), y *Rodríguez Cruz v. Padilla Ayala,* supra, pág. 519.

▮ Al igual que bajo la Ley de Personal del Servicio Público de Puerto Rico de 1975, el sistema de personal creado por la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, mantuvo la jurisdicción apelativa de J.A.S.A.P. Art. 12.002 (21 L.P.R.A. sec. 4552). La designación de este foro como un "organismo apelativo del sistema de administración de personal municipal" presenta una situación excepcional puesto que, como regla general, las instrumentalidades públicas excluidas de la Ley de Personal del Servicio Público de Puerto Rico de 1975 no tienen acceso a J.A.S.A.P. Véase Caballero Fuentes, *op. cit.,* pág. 104.

▮ B. No obstante, concluir que J.A.S.A.P. posee jurisdicción apelativa no es suficiente para disponer del reclamo de los empleados municipales. En ocasiones, tal determinación no pone fin a la controversia en torno al trámite, administrativo o judicial, que se ha de seguir. En el pasado nos hemos expresado en cuanto al problema de determinar cuál es el foro con jurisdicción para resolver

una controversia. Al determinar si procede acudir a los tribunales o a los órganos administrativos, debemos considerar varios aspectos de naturaleza tanto estatutaria como de discreción judicial. En tal sentido se ha desarrollado la doctrina de la jurisdicción primaria. Sobre esta doctrina hemos expresado:

> La doctrina de jurisdicción primaria atiende la jurisdicción original para considerar una reclamación. Consiste de dos (2) vertientes: jurisdicción primaria exclusiva y jurisdicción primaria concurrente. En la primera, la ley dispone que el organismo administrativo tendrá jurisdicción inicial exclusiva para examinar la reclamación. La jurisdicción concurrente se da cuando la ley permite que la reclamación se inicie bien en el foro administrativo o en el judicial. *Paoli Méndez v. Rodríguez*, 138 D.P.R. 449, 469 (1995). Véanse: *Colón v. Méndez, Depto. Recursos Naturales*, 130 D.P.R. 433 (1992). En particular, sobre la jurisdicción de J.A.S.A.P. en reclamaciones surgidas al amparo de la Ley de Personal del Servicio Público de Puerto Rico, véanse: *Delgado Rodríguez v. Nazario de Ferrer*, 121 D.P.R. 347 (1988); *Pierson Muller I v. Feijoó*, 106 D.P.R. 838 (1978); *Febres v. Feijoó*, 106 D.P.R. 676 (1978); *Otero Martínez v. Gobernador*, 106 D.P.R. 552 (1977).

En *Ferrer Rodríguez v. Figueroa*, 109 D.P.R. 398 (1980), aclaramos que el verdadero caso en el que aplica la doctrina de jurisdicción primaria es el de jurisdicción concurrente entre el foro administrativo y el judicial. Véase, a manera de ejemplo, nuestra decisión en *Gracia Ortiz v. Policía de P.R.*, 140 D.P.R. 247 (1996). Véase, además, *Junta Dir. Cond. Montebello v. Fernández*, 136 D.P.R. 223 (1994). Esto es debido a que la doctrina sólo nos ayuda a concluir cuál de las vías, la administrativa o la judicial, se debe seguir en primer término, a pesar de que ambos foros poseen una jurisdicción legal. Es en estos casos que operan las consabidas consideraciones relacionadas con la coordinación de las labores de las agencias y los tribunales, la pericia de la agencia, junto a la prontitud y flexibilidad del trámite administrativo.

Sin embargo, en el caso de autos "[n]o es necesario

que consideremos la aplicación de la conocida doctrina del Derecho administrativo sobre 'jurisdicción primaria' ". *Rovira Palés v. P.R. Telephone Co.*, 96 D.P.R. 47, 48 (1968). Al igual que en *Rovira Palés*, supra, la de autos es una controversia en que existe jurisdicción *exclusiva*. Se trata de un concepto que, aunque guarda relación con el de jurisdicción primaria, es distinto en su alcance y naturaleza. 2 *Davis, Administrative Law Treatise* Sec. 14.1, pág. 272 (3ra ed. 1994). La llamada "jurisdicción exclusiva" ha sido también denominada "jurisdicción estatutaria". Se trata de situaciones en que no aplica la doctrina de jurisdicción primaria, debido a que la propia ley aclara que no existe la jurisdicción concurrente. En dichos casos, el propio estatuto establece una jurisdicción exclusiva. "En el examen y aplicación de la doctrina de jurisdicción primaria es necesario tener presente que si el estatuto le confiere la jurisdicción al organismo administrativo, se trata de una jurisdicción estatutaria." D. Fernández Quiñones, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, Colombia, Ed. Forum, 1993, pág. 428. Véase *Ferretería Matos, Inc. v. P.R. Tel. Co.*, 110 D.P.R. 153 (1980). En tales casos, no estamos ante una doctrina jurisprudencial y sí ante un mandato legislativo.

■ Cuando existe un estatuto que expresamente le confiere la jurisdicción a un órgano administrativo sobre determinado tipo de asuntos, los tribunales quedan privados de toda autoridad para dilucidar el caso en primera instancia. Además, la designación de un foro administrativo con jurisdicción exclusiva es perfectamente compatible con la revisión judicial de la cual puede ser objeto posteriormente la decisión del organismo.

■ La jurisdicción exclusiva puede ser tanto original como apelativa. Esto es, el legislador puede designar la exclusividad del foro tanto en la etapa inicial de una reclamación, así como para conferirle a una agencia jurisdicción exclusiva para atender en primer lugar la apelación de una

decisión administrativa. En este sentido podemos hablar de una jurisdicción apelativa exclusiva y una jurisdicción original exclusiva. *Ind. Cortinera Inc. v. P.R. Telephone Co.*, 132 D.P.R. 654 (1993).

En cuanto a la concesión de una jurisdicción apelativa a los órganos administrativos, en *Díaz Marín v. Mun. de San Juan*, supra, págs. 338–339, expresamos:

> En Puerto Rico la Asamblea Legislativa ha utilizado en muchas ocasiones los cuerpos o tribunales administrativos a nivel apelativo. Los más conocidos son la Junta de Apelaciones de Construcción, la Comisión Industrial, la Comisión de Investigación, Procesamiento y Apelación (C.I.P.A.), la Junta de Apelaciones del Sistema de Instrucción Pública, y la Comisión de Querellas Municipales. La creación de estos consejos con poderes cuasi-judiciales se justifica por varias razones: (1) la experiencia y especialización de cada uno; (2) la uniformidad de sus fallos y remedios, y (3) el costo tan bajo de la litigación administrativa para los afectados. En los tribunales administrativos apelativos, el litigante no necesita representación legal y usualmente se enfrentan a los asuntos en sus méritos sin enredarse en tecnicismos que entorpecen los procedimientos en los tribunales.

La Comisión de Investigación, Procesamiento y Apelación (C.I.P.A.) es un claro ejemplo de un caso de jurisdicción apelativa exclusiva. Se trata de un *cuerpo apelativo con jurisdicción exclusiva* sobre sanciones impuestas por una autoridad nominadora en respuesta a casos de mal uso o abuso de la autoridad por parte de funcionarios de la Rama Ejecutiva que estén autorizados a efectuar arrestos; en particular, los policías. Ley Núm. 32 de 22 de mayo de 1972, según enmendada, 1 L.P.R.A. sec. 172(2) (Sup. 1996). Véase *Ortiz Ruiz v. Superintendente Policía*, 132 D.P.R. 432 (1993).

Por último, la Exposición de Motivos de la Ley Núm. 23 de 16 de julio de 1992, Leyes de Puerto Rico, pág. 153, la cual enmendó la ley orgánica de la C.I.P.A., es indicativa de que, aun cuando la designación de una jurisdicción exclusiva debe ser clara y precisa, el legislador no siempre

utiliza el término "exclusiva". Aunque jurisprudencial-
mente hemos establecido unos criterios para determinar
cuándo estamos ante un caso de jurisdicción exclusiva, en
última instancia tal designación es una facultad de la
Legislatura. En este sentido, no podemos adoptar una pos-
tura tan restrictiva que tenga el efecto de, a través de
nuestra función interpretativa, coartar la voluntad del
legislador.

El inciso (2) del Art. 2 de la Ley Núm. 32, *supra*, 1
L.P.R.A. sec. 172(2), dispuso que la C.I.P.A.: "Actuará como
cuerpo apelativo para oír y resolver ...." Después, a través
de la Ley Núm. 23, *supra*, 1 L.P.R.A. sec. 172(2) (Sup.
1996) el inciso fue enmendado en los términos siguientes:
"La Comisión ... actuará como cuerpo apelativo con juris-
dicción exclusiva para oír y resolver apelaciones." Como
vemos, la enmienda de 1992 incorporó la expresión "juris-
dicción exclusiva". ¿Significa esto que previo a la enmienda
no existía tal jurisdicción? La respuesta es en la negativa y
está expuesta de forma clara y directa en el historial legis-
lativo de la medida.

■ La Exposición de Motivos de la Ley Núm. 23, *su-
pra*, 1992 Leyes de Puerto Rico 153–155, explica que la
inclusión de la frase "jurisdicción exclusiva" tuvo el único
objetivo de aclarar cualquier confusión que pudiera existir
con el ámbito jurisdiccional de J.A.S.A.P. Expresamente, el
legislador afirma que para conferir "jurisdicción exclusiva"
a una agencia administrativa no siempre utiliza esos
términos. A esos efectos expresa:

> Entre los organismos administrativos establecidos por la
> Asamblea Legislativa se encuentra la Comisión de Investiga-
> ción, Procesamiento y Apelación, creada por la Ley Núm. 32, de
> 22 de mayo de 1972, según enmendada, con el fin de *establecer
> un foro exclusivo* para apelar todos aquellos casos en que se
> haya imputado mal uso ....
>
> . . . . . . .
>
> Aunque la Ley Núm. 32 *tuvo la intención de conceder juris-
> dicción exclusiva a la Comisión de Investigación, Procesamiento*

*y Apelación sobre toda determinación de personal de la Policía relacionada a la comisión de faltas a su reglamento,* la posterior aprobación de la Ley de Personal del Servicio Público en 1975 creó confusión sobre el ámbito de su autoridad apelativa como resultado de la creación de J.A.S.A.P. Para evitar futuros conflictos jurisdiccionales entre estos organismos, resulta necesario enmendar la Ley Núm. 32 *a los fines de aclarar la jurisdicción apelativa* de la Comisión de Investigación, Procesamiento y Apelación. (Énfasis suplido.) Leyes de Puerto Rico, *supra*, págs. 154–155.

A la luz de estas expresiones, consideramos incorrecto que jurisprudencialmente exijamos al legislador la inclusión de unas palabras que, si bien despejan dudas, no son condición sine qua non para el reconocimiento de la jurisdicción exclusiva.

Visto lo anterior, procede examinar la disposición estatutaria que toca a la controversia de autos. El Art. 12.002 de la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, *supra*, dispone, en lo pertinente, lo siguiente:

La Junta de Apelaciones del Sistema de Administración de Personal establecida por las secs. 1301 *et seq.* del Título 3, conocidas como "Ley de Personal del Servicio Público", *será el organismo apelativo del sistema de administración de personal municipal.* Los procedimientos de reglamentación y adjudicación respecto del personal municipal, también estarán sujetos a las secs. 2101 *et seq.* del Título 3, conocidas como "Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico". (Énfasis suplido.)

La clara designación de J.A.S.A.P. como organismo apelativo es indicativa de que "el legislador le confió esa facultad específicamente a la agencia". Fernández Quiñones, *op. cit.* Concluimos que, a la luz de lo dispuesto en la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, J.A.S.A.P. posee una jurisdicción exclusiva sobre las reclamaciones de empleados municipales relacionadas con el sistema de personal municipal. De este modo, su jurisdicción se extiende desde los casos rela-

cionados a las áreas esenciales del mérito, hasta otras tales como las acciones disciplinarias, los beneficios marginales y la jornada de trabajo.

Esto no impide que la controversia no pueda ser resuelta posteriormente en los tribunales. De la determinación a la que llegue J.A.S.A.P. podrá acudir el municipio o el empleado en una revisión judicial. Art. 12.027 (21 L.P.R.A. sec. 4577) y Sec. 7.16 (3 L.P.R.A. sec. 1396).

Finalmente, debemos señalar que la reglamentación adoptada por el Municipio de Guaynabo es cónsona con los principios estatutarios expuestos. El Reglamento de Personal adoptado por el Municipio de Guaynabo en 1979, en cumplimiento con lo establecido en la Ley de Personal del Servicio Público de Puerto Rico, dispone todo lo relacionado a los días feriados, las horas extras y la hora de tomar alimentos. Arts. 11 y 13 (3 L.P.R.A. secs. 1561 y 1563). De otro lado, la Sec. 8.4 reconocía el derecho de apelación ante J.A.S.A.P. En 1987 el reglamento del Municipio sufrió enmiendas, una de las cuales modificó lo relativo al pago de horas extras con el fin de armonizar la sección con lo dispuesto en la Ley Federal de Normas Razonables del Trabajo. En cambio, las disposiciones concernientes a los procedimientos apelativos permanecieron inalteradas, y bajo dicho reglamento, J.A.S.A.P. es todavía el foro al cual se debe acudir para impugnar las actuaciones del Municipio relacionadas al sistema de personal.

En el caso de autos, los empleados del Municipio reclamaban el pago del trabajo realizado durante horas extras, días feriados y períodos de tomar alimentos. Su reclamo concierne a la prestación de servicios en exceso de su jornada de trabajo. 21 L.P.R.A. sec. 4571. Claramente es un asunto relacionado al sistema de personal municipal que la Legislatura quiso que J.A.S.A.P. resolviera de forma exclusiva. Concluimos que dicha entidad es el organismo apelativo designado por mandato de ley para atender el

presente reclamo de los empleados municipales de Guaynabo.

## IV

No obstante lo anterior, el tribunal de instancia declinó trasladar el caso a J.A.S.A.P. en vista de que la reclamación se había realizado al amparo del procedimiento sumario establecido por la Ley Núm. 2, *supra*. Según la resolución de instancia, la jurisprudencia es clara con respecto a la importancia de promover el carácter sumario de los procedimientos de reclamación de salarios. Simultáneamente, el tribunal determinó que la remisión de los procedimientos de autos a J.A.S.A.P. iba a tener el efecto de dilatar excesivamente el trámite de la reclamación. Según dicho foro, este es el tipo de dilación que justifica que se releve al peticionario de tener que agotar los remedios administrativos. Sec. 4.3 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, 3 L.P.R.A. sec. 2173. Amparado en dicho precepto de ley y en los propósitos que inspiraron la citada Ley Núm. 2, el tribunal entendió que nuestro ordenamiento legal le requería darle curso judicial a la querella y denegar, por lo tanto, el traslado. El razonamiento antes expuesto es defectuoso. No existe fundamento alguno para preterir el trámite administrativo. La jurisdicción exclusiva de J.A.S.A.P. no choca con el carácter sumario de la Ley Núm. 2, *supra*.

En primer lugar, por tratarse de un caso de jurisdicción exclusiva del foro administrativo, no aplica la doctrina del agotamiento de los recursos administrativos ni sus excepciones. Recordemos que dicha doctrina, incorporada a nivel estatutario a través de la Sec. 4.3 de la Ley de Procedimiento Administrativo Uniforme del Estado Libre Asociado de Puerto Rico, *supra*, atañe a la etapa dentro del procedimiento administrativo en la cual los tribunales de-

ben intervenir y ejercer su función revisora. *Colón Ventura v. Méndez*, supra; *Aguilú Delgado v. P.R. Parking System*, 122 D.P.R. 261, 266 (1988). "El agotamiento presenta una situación en la que alguna acción administrativa ha comenzado, pero aún no ha finalizado." (Traducción nuestra.) B. Schwartz, *Administrative Law*, 3ra ed., Boston, Ed. Little, Brown and Co., 1991, Sec. 8.26, pág. 525. El caso de autos trata, en cambio, sobre cuál foro ostenta la jurisdicción original para resolver el reclamo. Nuestra función adjudicativa se limita a determinar dónde se debió presentar en primer lugar la reclamación.

En segundo lugar, no se ha demostrado la existencia de un agravio de patente intensidad a un derecho garantizado constitucionalmente, excepción reconocida por la jurisprudencia para obviar el cauce administrativo. Véanse: *Gracia Ortiz v. Policía de P.R.*, supra; *Paoli Méndez v. Rodríguez*, supra; *Rivera v. Depto. de Servicios Sociales*, 132 D.P.R. 240 (1992); *Mercado Vega v. U.P.R.*, 128 D.P.R. 273 (1991); *Delgado Rodríguez v. Nazario de Ferrer*, supra, págs. 356–357.

No cabe duda de que la Ley Núm. 2, *supra*, es un mecanismo procesal de suma importancia, que es producto de una sana política pública que busca "diligencia y prontitud en la tramitación judicial de las reclamaciones laborales". (Énfasis suprimido.) *Mercado Cintrón v. Zeta Com., Inc.*, 135 D.P.R. 737 (1994). No obstante —y tal como expusimos en dicho caso— es un mecanismo predicado en la existencia de un procedimiento *judicial*. En este caso, puesto que el foro *administrativo* es el encargado de dilucidar la reclamación, ella no podía incoarse al amparo del procedimiento dispuesto en la citada Ley Núm. 2. El tribunal erró al tomar en consideración los principios que informan ese procedimiento sumario.

Además, no podemos pasar por alto que el procedimiento sumario dispuesto por la Ley Núm. 2, *supra*, está

previsto para casos de reclamaciones laborales de beneficios o derechos de los empleados del sector privado. La propia ley define "obrero" como "todo trabajador manual, de cualquier sexo y a aquellas personas naturales que estuvieren empleadas en servicios u ocupaciones domésticas", mientras que "empleado" es, en su sentido amplio, "toda clase de artesano, empleado o dependiente de comercio o industria". Sec. 2 de la Ley Núm. 2, *supra*, 32 L.P.R.A. sec. 3119. Las definiciones del estatuto no incluyen a los empleados municipales.

## V

Vistas las normas pertinentes en relación con el sistema de personal municipal aplicables al caso de autos, resolvemos que J.A.S.A.P. es el foro con jurisdicción exclusiva sobre la reclamación de ambos empleados municipales. *Cf. First Fed. Savs. v. Asoc. de Condómines*, 114 D.P.R. 426, 434 (1983). El tribunal de instancia se equivocó al denegar la desestimación.

Por los fundamentos antes expuestos, *se dictará sentencia en la que se revoquen las resoluciones recurridas y se declaren con lugar las mociones de desestimación presentadas por el Municipio de Guaynabo. Se desestiman, por lo tanto, las demandas presentadas por los empleados. Sin embargo, somos conscientes de que por primera vez nos expresamos sobre la jurisdicción exclusiva de J.A.S.A.P. en este tipo de caso. Por consideraciones de equidad, se ordena al Tribunal de Primera Instancia, Sala Superior de Bayamón, la remisión inmediata de ambas reclamaciones a la Junta de Apelaciones del Sistema de Administración de Personal para que disponga de la reclamación según proceda en derecho.*

El Juez Asociado Señor Fuster Berlingeri emitió una opinión disidente, a la cual se unió el Juez Asociado Señor Negrón García.

— O —

Opinión disidente emitida por el Juez Asociado Señor Fuster Berlingeri, a la cual une el Juez Asociado Señor Negrón García.

Como se sabe, la determinación de que un organismo administrativo tenga jurisdicción *exclusiva* para entender en algún asunto apareja consecuencias distintas y más graves que la determinación de que dicho organismo tenga jurisdicción *primaria* sobre éste. Esta última sólo significa que los tribunales deben *diferir* su intervención en el caso en cuestión hasta tanto el organismo administrativo especializado haya considerado el asunto inicialmente. Como bien señala el Prof. Demetrio Fernández, cuando existe jurisdicción primaria "el ejercicio de jurisdicción por el tribunal no ha sido eliminado sino meramente aplazado". D. Fernández, *Derecho administrativo y Ley de Procedimiento Administrativo Uniforme*, 1993, pág. 425.

En cambio, la existencia de la jurisdicción exclusiva en el organismo administrativo significa que el foro judicial no tiene autoridad alguna para intervenir. Se priva así a los tribunales de todo poder de entender en el asunto. La facultad que comúnmente tienen los tribunales de jurisdicción general, queda *suprimida* en tal caso. *Ferrer Rodríguez v. Figueroa*, 109 D.P.R. 398 (1980).

En vista del alcance extremo que tiene la concesión de jurisdicción exclusiva, ella misma no puede presumirse nunca. Por el contrario, la norma sobre el particular es *que sólo existe jurisdicción exclusiva cuando ello haya sido claramente dispuesto por ley*. De ordinario, la legislación correspondiente debe fijar dicha jurisdicción exclusiva de

modo expreso, o en términos tales que no haya lugar a dudas sobre ésta. Así lo hemos resuelto antes. *Junta Dir. Cond. Montebello v. Fernández*, 136 D.P.R. 223 (1994); *First Fed. Savs. v. Asoc. de Condómines*, 114 D.P.R. 426 (1983); *Ferretería Matos, Inc. v. P.R. Tel. Co.*, 110 D.P.R. 153 (1980). Esta es la norma que prevalece también en la jurisdicción norteamericana, de donde procede mayormente nuestro propio derecho administrativo. Véanse: *Amalgamated Workers v. Edison Co.*, 309 U.S. 261 (1940); *Administrative Law*, 2 Am.Jur. 2d, pág. 512 (1994).

La norma de que la jurisdicción exclusiva debe ser fijada claramente por estatuto queda ilustrada al examinar los casos más conocidos de tal jurisdicción en Puerto Rico. Así, pues, la jurisdicción exclusiva de la Comisión de Investigación, Procesamiento y Apelación (C.I.P.A.) se establece *expresamente* por estatuto. Dice la ley orgánica de esta entidad que:

> La Comisión ... [a]ctuará como cuerpo apelativo con jurisdicción *exclusiva* para oír y resolver apelaciones. ... (Énfasis suplido.) 1 L.P.R.A. sec. 172(2).

Igualmente, la jurisdicción de la Junta de Relaciones del Trabajo se establece expresamente:

> Esta facultad será *exclusiva* .... (Énfasis suplido.) 29 L.P.R.A. sec. 68(a).

En otros casos, como el de la Comisión Industrial y como era el de la Administración de Estabilización Económica, la ley que crea el organismo administrativo no concede la facultad en cuestión de manera expresa pero, en su lugar, establece un procedimiento particular, tanto en primera instancia como en apelación, que es *claro y preciso*, y del cual surge, *sin ambages*, que la jurisdicción inicial es exclusiva. *Wirshing & Compañía v. Buscaglia, Tes.*, 64 D.P.R. 363 (1945); *Asoc. de Distribuidores v. Admón. Estabilización*, 81 D.P.R. 212 (1959).

En el caso de autos, la mayoría resuelve que la Junta de Apelaciones del Sistema de Administración de Personal (en adelante J.A.S.A.P.) tiene la facultad *exclusiva* para entender en reclamaciones de horas extras de empleados municipales. Llega a tal conclusión por puro fíat, sin fundamentos adecuados y sin un análisis cabal del asunto. La conclusión a la que llega la mayoría, además, es contraria a la norma antes mencionada de que la jurisdicción exclusiva debe establecerse claramente, sin ambages, y es contraria a nuestros propios precedentes sobre J.A.S.A.P. Veamos.

Nótese, en primer lugar, que ninguno de los estatutos pertinentes establecen *expresamente* que la jurisdicción en cuestión de J.A.S.A.P. es exclusiva. No lo dice la propia ley que crea a J.A.S.A.P. 3 L.P.R.A. secs. 1393–1398. Tampoco lo dice la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, que refiere a J.A.S.A.P. determinadas apelaciones de decisiones de las autoridades municipales. 3 L.P.R.A. sec. 4552. Como no hay una disposición expresa, es necesario examinar si algunos de esos dos estatutos, de algún otro modo, establecen claramente y sin ambages que la jurisdicción en cuestión es exclusiva.

Uno de los dos estatutos aludidos, la Ley de Municipios Autónomos del Estado Libre Asociado de Puerto Rico de 1991, no provee nada en particular que nos permita determinar que el legislador fijó claramente la jurisdicción exclusiva de J.A.S.A.P. en casos de reclamaciones de horas extras, como el de autos. Por el contrario, tanto el lenguaje utilizado en la escueta disposición en cuestión como el contexto en que aparece dicha disposición, sólo dan lugar a dudas sobre si J.A.S.A.P. acaso tiene alguna autoridad para entender en este tipo de reclamaciones. La disposición en cuestión escuetamente establece que el Alcalde y el Presidente de la Asamblea Municipal serán las autoridades nominadoras del personal de sus respectivas ramas del

gobierno municipal, y que J.A.S.A.P. "será el organismo apelativo del sistema de *administración* de personal municipal". (Énfasis suplido.) 21 L.P.R.A. sec. 4552. Dicha disposición está incluida en el capítulo de la ley, que regula el establecimiento, la estructura y la composición de un sistema para la administración del personal municipal fundamentado en el principio de mérito. Lo que se persigue en esta parte de dicha legislación, en esencia, es que en relación con el reclutamiento, la clasificación, el ascenso, el traslado y la retención de los empleados municipales, las actuaciones de las autoridades nominadoras sean conformes a las características propias de los puestos de confianza, de carrera o irregulares, según sea el caso, y sujeto al principio de mérito. En este contexto, a J.A.S.A.P. se le confiere una autoridad apelativa evidentemente *para que ejerza aquí también la misma jurisdicción que tiene con respecto a otras agencias gubernamentales, cuando esté en disputa alguna acción relacionada con las áreas esenciales al principio de mérito.* No hay nada, pues, en esta ley que permita concluir que el legislador claramente le dio una jurisdicción *exclusiva* sobre cualquier reclamación de horas extras de empleados municipales.

El otro estatuto, el que crea a J.A.S.A.P., al definir la jurisdicción apelativa de dicha entidad, la circunscribe a las acciones o decisiones de las autoridades nominadoras que de un modo u otro violen el principio de mérito. En tales casos, la parte afectada *"podrá* apelar" de tal acción o decisión, es decir, *potestativamente*, y las causas interpuestas por los empleados "serán vistas en *primera instancia"* por J.A.S.A.P. Evidentemente, no se trata del lenguaje que se utiliza cuando se persigue establecer una jurisdicción *exclusiva. Asoc. de Distribuidores v. Admón. Estabilización*, supra. *Así lo hemos resuelto reiteradamente antes*, precisamente con respecto a J.A.S.A.P., al decidir que la autoridad de J.A.S.A.P. es tan sólo una de *jurisdicción pri-*

*maria* y que *no es de naturaleza exclusiva,* que descarte siempre la utilización de otros medios procesales para cuestionar judicialmente la decisión administrativa que también puede dilucidarse ante J.A.S.A.P. *Delgado Rodríguez v. Nazario de Ferrer,* 121 D.P.R. 347 (1988); *Febres v. Feijoó,* 106 D.P.R. 676 (1978); *Pierson Muller I v. Feijoó,* 106 D.P.R. 838 (1978).

En resumen, pues, la autoridad que se le confiere a J.A.S.A.P. en casos de empleados municipales es la *misma* que tiene ese organismo con respecto a otros empleados públicos. Hemos resuelto ya, reiteradamente, que se trata de una autoridad de jurisdicción *primaria* que no es exclusiva, como la mayoría erróneamente y por puro fíat dice ahora que es a contrapelo de muchas decisiones nuestras en sentido contrario.

La mayoría confunde en este caso dos esquemas jurídicos de índole distinta al mezclar las funciones de J.A.S.A.P. con la determinación de horas extras. J.A.S.A.P. forma parte de la estructura de un sistema de servicio civil profesional y despolitizado. Lo de las horas extras pertenece a otro orden de cosas. Se trata de una fundamental condición laboral de cualquier empleado, tanto gubernamental como de la empresa privada. J.A.S.A.P. es un elemento integral del entramado que busca asegurar la más sana administración pública. Las horas extras, en cambio, son una de las garantías constitucionales que protege la dignidad de los trabajadores. Aunque hay tangencias entre estos dos (2) importantes esquemas jurídicos, ello no permite suponer, como lo hace la mayoría, que la determinación de horas extras es una función exclusiva inherente a J.A.S.A.P.

I

Como la situación que tenemos ante nos es propiamente de *jurisdicción primaria,* la cuestión que debemos dilucidar es si existe en este caso unas circunstancias especiales

que justifiquen no seguir aquí la norma de postergar la intervención judicial hasta tanto el organismo administrativo —J.A.S.A.P.— haya entendido en el asunto litigioso. Es decir, debemos decidir si el tribunal de instancia debió referir la controversia de este caso al foro administrativo, a la luz de los factores pertinentes que deben ponderarse en los casos de jurisdicción primaria, que persiguen coordinar y armonizar la labor adjudicativa entre ambos foros. *Delgado Rodríguez v. Nazario de Ferrer*, supra; *Ferrer Rodríguez v. Figueroa*, supra.

La respuesta obvia a la interrogante formulada en el párrafo anterior es que *no* debe aplazarse más la intervención judicial. El caso de autos trata de horas extras, asunto que los tribunales adjudican de ordinario, y que no requiere conocimientos especializados. Se trata, además, de un reclamo que se origina en una disposición constitucional, como lo admite la propia mayoría. Y se trata, finalmente, de un asunto que requiere pronta solución, por tratarse de una reclamación de índole laboral. Desde el punto de vista de la justicia social, no existe razón alguna para que los trabajadores municipales queden excluidos de la fundamental política pública del país, que exige diligencia y prontitud en la tramitación de las reclamaciones salariales de los obreros. Sus necesidades económicas y su relativa debilidad frente al patrono no son menores que las de otros trabajadores.

Nótese que aquí el patrono, el Municipio de Guaynabo, ha estado arrastrando los pies y dándole largas a la reclamación por *espacio de varios años*. La querella salarial de estos trabajadores municipales se presentó el 20 de junio de 1991. El Municipio primero pidió y obtuvo una prórroga para contestar; luego interpuso reiteradas objeciones relativas a su emplazamiento; posteriormente compareció para alegar la prescripción de las reclamaciones; más tarde solicitó una prórroga para contestar los interrogatorios que se le sometieron; entonces cambió de representación legal.

Luego de aún otros trámites procesales, *el 29 de noviembre de 1993*, casi dos años y medio después de la querella, el Municipio de Guaynabo solicitó su desestimación, alegando entonces que la jurisdicción sobre dicha querella correspondía a J.A.S.A.P. A estas alturas, pasados ya *cinco años* desde que se presentó la querella judicialmente, no tiene sentido postergar más la solución de este caso, remitiéndolo al foro administrativo.

·Como la mayoría opta por otro curso de acción, que considero injusto y desacertado, disiento.