Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL VII

| | | |
|---|---|---|
| FRANCISCO RODRÍGUEZ COLÓN Y OTROS<br><br>Apelada<br><br>v.<br><br>LUMA ENERGY, LLC Y OTROS<br><br>Apelante | KLAN202400692 | Apelación procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Sobre: Injunction (Entredicho Provisional, Preliminar y Permanente) y Daños y Perjuicios<br><br>Caso Núm.: PO2024CV00638 |

Panel integrado por su presidenta, la Juez Domínguez Irizarry, el Juez Ronda del Toro y el Juez Pérez Ocasio

Domínguez Irizarry, Juez Ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 24 de septiembre de 2024.

La parte apelante, LUMA Energy, LLC y LUMA Energy ServCo, LLC, comparece ante nos para que dejemos sin efecto la *Sentencia Parcial* emitida por el Tribunal de Primera Instancia, Sala de Ponce, el 16 de abril de 2024 y notificada el 17 de abril de 2024. Mediante la misma, el foro primario declaró *Ha Lugar* una solicitud de *injunction* preliminar incoada por los aquí apelados, Francisco Rodríguez Colón, Élida Rivera Toro y la Sociedad Legal de Gananciales por ambos compuesta.

Por los fundamentos que expondremos a continuación, se confirma la *Sentencia Parcial* apelada.

**I**

El 7 de marzo de 2024, la parte apelada presentó la demanda de epígrafe contra LUMA Energy LLC, LUMA Energy ServCo, LLC y la Autoridad de Energía Eléctrica de Puerto Rico (AEE). En la misma, alegó que la AEE le remitió una misiva facturándole

$18,958.31, por concepto de consumo no facturado por irregularidades y cargos administrativos. En dicha misiva, se le advirtió a la parte apelada que tenía derecho a presentar una solicitud de revisión ante la Secretaria de Procedimientos Adjudicativos de la AEE, dentro de los próximos veinte (20) días, contados a partir de haber recibido la notificación.

En su demanda, la parte apelada indicó que, habiendo presentado una petición de revisión, la Oficial Examinadora a cargo, le notificó, mediante *Resolución y Orden* de 2 de marzo de 2021, que se había acogido su petición y que se señalaría una vista administrativa en su fondo. A su vez, se les apercibió a los apelados que dicha vista sería la única oportunidad que tendrían para la discusión plena del caso, por lo que deberían traer toda la evidencia pertinente. Sostuvieron los apelados que, sin haberse celebrado vista alguna y sin haber culminado el proceso administrativo, el 12 de febrero de 2024, la parte apelante procedió a desconectarle el servicio de energía eléctrica.

A tenor con lo antes expuesto, los apelados imputaron a la parte apelante haberle provocado daños y perjuicios inminentes e irreparables, al privarles, indebida e injustificadamente, del servicio de energía eléctrica. De este modo, solicitaron la intervención del Tribunal de Primera Instancia para que dictara una orden de entredicho preliminar e *injunction* permanente, donde impidiese que la parte apelante continuase ejecutando la suspensión de energía eléctrica denunciada. Específicamente, solicitaron el *injunction* porque, a su juicio, cualquier otro remedio resultaría inadecuado y a destiempo. Además, solicitaron la concesión de daños económicos.

Mediante *Orden* del 8 de marzo de 2024, el Tribunal de Primera Instancia declaró *No Ha Lugar* la solicitud de entredicho provisional incoado por la parte apelada. No obstante, señaló una

vista para dilucidar la concesión de un remedio de *injunction* preliminar, a celebrarse el 14 de marzo de 2024.

Así las cosas, el 13 de marzo de 2024, la parte apelante presentó una *Moción de Desestimación*, y en la alternativa, se opuso a la concesión del entredicho provisional e *injunction* permanente. En esencia, argumentó que, el Tribunal de Primera Instancia debía desestimar la demanda por falta de jurisdicción sobre la materia. Con relación a ello, sostuvo que, de acuerdo con la Ley de Transformación y ALIVIO Energético, Ley 57-2024, 22 LPRA sec. 1054 *et seq.*, el Negociado de Energía de Puerto Rico era el foro con jurisdicción primaria y exclusiva para dilucidar controversias sobre facturación de energía entre las compañías de servicio eléctrico y sus clientes. A su vez, afirmó que el primer paso para objetar un cargo en la factura de servicio era presentar una objeción o impugnación ante LUMA. Sobre dicho particular, indicó que ese proceso no se había cumplido, y que, ante la existencia de un remedio adecuado en ley, el remedio interdictal no estaba disponible. De este modo, solicitó la desestimación del pleito porque, a su juicio, no existía una causa de acción que justificara la concesión de un remedio, ya que existían remedios disponibles en el foro administrativo, y no se cumplían los requisitos para otorgar el *injunction.*

El 14 de marzo de 2024, se celebró la vista de interdicto preliminar y permanente. La AEE no compareció a la referida vista, ni excusó su incomparecencia. Por ello, mediante *Orden* del 20 de marzo de 2024, el foro primario solicitó que la AEE mostrara causa por tal proceder. Luego de varios trámites procesales, la AEE adoptó por referencia los argumentos levantados por los apelantes en su moción de desestimación, mediante *Moción Fijando Posición y en Cumplimiento de Orden*, presentada el 27 de marzo de 2024. En la alternativa, solicitó la desestimación de la reclamación en su contra,

por entender que la misma no exponía una reclamación que justificase la concesión de un remedio. Argumentó que no estaba facultada para reconectar el servicio eléctrico a los apelados. No obstante, la AEE guardó silencio sobre el trámite administrativo al que la parte apelada hizo referencia en su demanda.

El 16 de abril de 2024, el Tribunal de Primera Instancia notificó la *Sentencia Parcial* aquí apelada. Mediante la misma, atendió los planteamientos jurisdiccionales esbozados por LUMA. El foro primario determinó que no procedía agotar el remedio administrativo, porque el pleito no trataba de una objeción a una factura, sino de una irregularidad en el consumo de energía eléctrica. En apoyo a dicha determinación, sostuvo que la AEE advirtió a los apelados que podían solicitar una revisión administrativa, y cuando lo hicieron, la AEE la acogió mediante *Resolución y Orden*, indicando que se estaría señalando una vista administrativa en su fondo. Sin embargo, dicha vista nunca fue señalada ni notificada por la AEE. Aun así, la parte apelante procedió al corte del servicio de energía eléctrica de los apelados, sin que se hubiese completado el trámite que acreditaría el agotamiento del remedio administrativo adecuado. De este modo, el foro *a quo* concluyó que procedía su intervención inmediata, sin que se hubiera completado el trámite administrativo correspondiente, ya que, de lo contrario, los apelados quedarían en un estado de indefensión total, ante la inacción de la AEE, mientras se encontraban privados del servicio de energía eléctrica.

En su pronunciamiento, el Tribunal de Primera Instancia declaró *No Ha Lugar* la moción de desestimación presentada por la parte apelante el 13 de marzo de 2024, y la presentada por la AEE el 27 de marzo de 2024. A su vez, declaró *Ha Lugar* la solicitud de *injunction* preliminar, y ordenó a LUMA conectarles inmediatamente el servicio eléctrico a los apelados, mientras se completaba el trámite

administrativo. De igual forma, ordenó a la AEE a señalar la vista administrativa como parte del proceso agencial ante su consideración. En cumplimiento con nuestro ordenamiento procesal civil, el foro primario ordenó a los apelados prestar una fianza de mil dólares ($1,000.00) para garantizar el pago de costas y daños que pudiesen surgir como resultado del *injunction* concedido.

Inconforme, y tras denegada una previa solicitud de reconsideración, el 22 de julio de 2024, la parte apelante compareció ante nos mediante el presente recurso de apelación. En el mismo formula el siguiente señalamiento:

> Erró el TPI al resolver que, en los hechos particulares del presente caso, es de aplicación la excepción a la doctrina de agotamientos de los remedios administrativos y que, el presente caso, no aplica la doctrina de jurisdicción primaria y exclusiva.

Luego de examinar el expediente de autos, y con la comparecencia de ambas partes de epígrafe, procedemos a expresarnos.

**II**

**A**

Conforme es sabido, en materia de derecho administrativo, la doctrina de *jurisdicción primaria* está predicada en una norma de prelación jurisdiccional respecto al foro adjudicativo legitimado para atender, en principio, determinada controversia. *Procuradora Paciente v. MCS,* 163 DPR 21, 35 (2004); *Ortiz v. Panel del FEI,* 155 DPR 219, 242 (2001).

Siendo así, la misma exige a los tribunales de justicia auscultar el alcance de la ley habilitadora del organismo concernido, a fin de resolver si el asunto en cuestión es uno estrictamente sujeto a su ámbito de especialización. *Consejo de Titulares v. Gómez Estremera et al.,* 184 DPR 407, 430 (2012). Por tanto, la antedicha

norma plantea un esquema de competencia inicial, que opera en función a lo dispuesto en el estatuto regulador de la agencia.

El estado de derecho reconoce que la doctrina de jurisdicción primaria se manifiesta en dos contextos independientes: la *jurisdicción primaria exclusiva* y la *jurisdicción primaria concurrente. Rivera Ortiz v. Mun. de Guaynabo,* 141 DPR 257, 267 (1996). La jurisdicción primaria exclusiva hace referencia a las ocasiones en que, por virtud de ley, de manera clara e inequívoca, la autoridad de los tribunales queda postergada hasta tanto la agencia concernida entienda primero sobre el asunto. De este modo, por mandato legislativo, los foros judiciales están impedidos de asumir jurisdicción inicial en un asunto que, si bien es por ellos adjudicable, ha sido estricta y exclusivamente delegado a la intervención original del cuerpo administrativo de que trate. Ahora bien, mediante la posterior etapa de revisión judicial, la parte interesada asegura el efectivo ejercicio de la labor de los tribunales de justicia. *Rivera Ortiz v. Mun. de Guaynabo,* págs. 273-274*; Aguilú Delgado v. P.R. Parking System,* 122 DPR 261, 266 (1988).

Por su parte, la jurisdicción primaria concurrente plantea un asunto de *deferencia* a la especialización de las agencias respecto a las materias que le han sido delegadas. Por tanto, los tribunales, aunque plenamente facultados para atender la reclamación de que trate, autolimitan su intervención, a fin de que los organismos administrativos empleen su conocimiento experto en aras de llegar a una disposición más precisa. Así pues, aunque ambos foros poseen igual autoridad para atender la controversia pertinente, cuando el asunto a determinarse se fundamenta en cuestiones de hechos complejos, cuya dilucidación requiere cierto grado de pericia, los foros judiciales se abstendrán de ejercer su función adjudicadora, ello al reconocer la adecuacidad de la intervención primaria de la agencia. *Rivera Ortiz v. Mun. de Guaynabo,* pág. 268.

Sin embargo, el criterio de deferencia antes indicado no opera de manera automática, sino que se extiende conforme a las particularidades y la naturaleza de cada caso. *Mun. de Caguas v. AT&T,* 154 DPR 401, 411 (2001); *Paoli Méndez v. Rodríguez,* 138 DPR 449, 470 (1995). En este contexto, la doctrina interpretativa en la materia que atendemos reconoce que los siguientes serán algunos de los factores a considerarse al momento de referir la adjudicación de la controversia de que trate al ente administrativo pertinente: 1) la destreza o pericia de la agencia; 2) complejidad y especialidad de la controversia; 3) la prontitud en el proceso de adjudicación y; 4) la viabilidad y flexibilidad de las técnicas de adjudicación. *Ortiz v. Cooperativa de Ahorro y Crédito,* 120 DPR 253, 262 (1987); *Ferrer Rodríguez v. Figueroa,* 109 DPR 398, 402 (1980).

No obstante, nuestro ordenamiento jurídico ha resuelto que "la doctrina de jurisdicción primaria no es una camisa de fuerza", por lo que, en determinadas circunstancias, se ha reconocido su inaplicabilidad. *Consejo de Titulares v. Gómez Estremera et al.,* supra, pág. 430. A tenor con ello, el estado de derecho dispone que la referida norma no opera en toda su extensión cuando la cuestión planteada sea una puramente judicial. Por tanto, la doctrina de jurisdicción primaria habrá de aplicarse en todo caso cuya adjudicación amerite el peritaje de una agencia administrativa, no así cuando la cuestión en disputa sea una de estricto derecho. *Consejo de Titulares v. Gómez Estremera et al.,* pág. 431.

**B**

De otro lado, la doctrina de agotamiento de remedios administrativos supone un ejercicio de abstención judicial, ello en cuanto al momento idóneo en el cual los tribunales habrán de intervenir en una controversia que aún no ha completado el cauce agencial. *Moreno Ferrer v. JRCM,* 209 DPR 430, 451 (2022); *Colón Rivera v. ELA,* 189 DPR 1033, 1057 (2013); *S.L.G. Flores-Jiménez v.*

*Colberg,* 173 DPR 843, 851 (2008); *Procuradora Paciente v. MCS,* págs. 469-470; *Asoc. Pesc. Pta. Figueras v. Pto. del Rey, Inc.*, 155 DPR 906, 916 (2001). Así, y distinto a la norma de jurisdicción primaria exclusiva, la de agotamiento de remedios atiende la etapa en la cual la intervención judicial resulta propicia respecto a un asunto sometido al quehacer adjudicativo de determinado organismo. De este modo, esta doctrina se invoca para cuestionar la acción de un litigante que participó, o participa, de un procedimiento en una agencia y que, sin extinguir todos los recursos disponibles a su favor, acude al auxilio de los foros de justicia. *Moreno Ferrer v. JRCM*, 209 DPR 430, 436 (2022); *AAA v. UIA*, 200 DPR 903, 913 (2018).

El aspecto de la *temporalidad* constituye la premisa cardinal en la cual se fundamenta la norma sobre el agotamiento de remedios. De esta forma, el ordenamiento jurídico reconoce que su aplicación redunda en lograr que las agencias, previo a la intervención de los tribunales, puedan desarrollar un historial completo y preciso sobre la cuestión sometida a su escrutinio. Por igual, tal incidencia también permite al organismo emplear su conocimiento experto y adoptar las medidas que estime convenientes a la luz de la política pública que tiene a su haber implantar. *Procuradora Paciente v. MCS,* pág. 35; *Guadalupe v. Saldaña, Pres. U.P.R.*, 133 DPR 42, 49 (1993).

Como norma, la revisión judicial no está disponible hasta tanto el interesado no haya concluido los procedimientos correctivos provistos por la entidad administrativa concernida. Ahora bien, aun cuando agotar todos los remedios administrativos propios de determinado organismo constituye un requisito de carácter jurisdiccional a los efectos de propender para la intervención de los foros de justicia respecto a un decreto agencial final, el ordenamiento jurídico reconoce ciertas excepciones. En relación

con esto, tanto la ley como la jurisprudencia vigente reconocen las siguientes excepciones: 1) cuando los remedios por parte de la entidad administrativa son inadecuados; 2) cuando requerir el agotamiento de remedios redunda en un daño irreparable al promovente y, en el más justo balance de intereses, no se justifica agotar dichos remedios; 3) cuando medie una alegación sobre violación sustancial de derechos constitucionales; 4) cuando agotar los remedios administrativos resulte en una gestión inútil, ello por la dilación excesiva de los procedimientos; 5) cuando sea un caso claro de falta de jurisdicción de la agencia y; 6) cuando se trate de un asunto estrictamente de derecho y es innecesaria la pericia administrativa. 3 LPRA. sec. 9673.

**III**

En la presente causa, la parte apelante sostiene que erró el Tribunal de Primera Instancia al aplicar las excepciones de la doctrina de agotamiento de remedios administrativos, al declararse con jurisdicción, y al no aplicar la doctrina de jurisdicción primaria y exclusiva. Al respecto, plantea que el Negociado de Energía de Puerto Rico es el foro con jurisdicción primaria exclusiva para atender asuntos de facturación por el servicio eléctrico. En específico, aduce que, por no haber excepción a la doctrina de jurisdicción primaria exclusiva, el foro recurrido incidió al asumir jurisdicción en el pleito ante nos. Habiendo examinado el referido planteamiento a la luz de las particularidades del caso, y el derecho aplicable a la controversia de autos, procedemos a confirmar la *Sentencia Parcial* apelada. Veamos.

Un examen del expediente que nos ocupa, nos lleva a concluir que el pronunciamiento que atendemos es uno conforme a derecho y a la prueba presentada. En primer lugar, tal cual resuelto por la sala sentenciadora, la parte apelante se equivoca al alegar que la controversia de autos está relacionada con la facturación por

servicios de energía eléctrica ofrecidos por esta. Contrario a sus planteamientos, la prueba documental incontrovertida que hemos tenido a nuestro haber examinar, sostiene que, en efecto, la reclamación incoada por los apelados versa sobre el cobro por irregularidades en el consumo de energía eléctrica.

En específico, surge de la carta notificada por la AEE, fechada el 2 de octubre de 2020, que los apelados fueron informados de ciertos cargos surgidos a raíz de irregularidades energéticas. En esa carta, también se le advirtió a la parte apelada de su derecho a solicitar revisión de la determinación tomada por la AEE. Según se estableció ante el foro primario y ante nos, la petición de revisión incoada por los apelados fue acogida por la AEE mediante *Resolución y Orden* fechada el 2 de marzo de 2021. En el referido dictamen, se le informó que se estaría señalando una vista administrativa en su fondo. De hecho, se les apercibió a los apelados que, dicha vista, sería la única oportunidad que tendrían para la discusión plena del caso. No obstante, la vista administrativa nunca fue señalada ni notificada por la AEE. Así, sin completarse el proceso administrativo, la parte apelante, sin más, suspendió el servicio eléctrico de los apelados. La controversia de autos no es una de asuntos de facturación por servicio eléctrico, sino que es un reclamo legítimo de la parte apelada por la suspensión del servicio eléctrico de su hogar, sin que hubiese culminado el trámite administrativo correspondiente. Por tanto, por ser un asunto de estricto derecho, estamos impedidos de acoger el argumento de las apelantes de que el Negociado de Energía de Puerto Rico es el foro con jurisdicción primaria exclusiva para atender este caso.

Igualmente, y en el marco procesal de la tramitación del recurso de autos, coincidimos con el Tribunal de Primera Instancia que procedía su intervención inmediata sin que se hubiese completado el trámite administrativo correspondiente. Si bien, en

efecto, el agotamiento de remedios administrativos constituye un requisito de carácter jurisdiccional a los efectos de propender la intervención judicial, el trámite de la presente causa revela la concurrencia de ciertas de las excepciones contempladas en ley. Surge del expediente que la parte apelada llevaba esperando por una vista administrativa desde el año 2021, y que, aun así, unilateralmente se le suspendió su servicio eléctrico. Es decir, a instancia de la propia agencia concernida, a los apelados no se les dio la oportunidad de completar el trámite que acreditaría el agotamiento de remedios administrativos, y a pesar de ello, se procedió al corte de su servicio de energía eléctrica. Ante la falta de remedio adecuado a su favor, al igual que, de la dilación excesiva de los procedimientos, estamos de acuerdo con el foro sentenciador en la procedencia del recurso de *injunction* solicitado por los apelados. De no intervenirse inmediatamente, los apelados hubiesen quedado en un estado de indefensión ante la inacción de la AEE. Por tanto, toda vez lo anterior, resulta correcto concluir que se configuraron excepciones a la doctrina de agotamiento de remedios administrativos. Consecuentemente, determinamos que el foro primario contaba con jurisdicción para atender el caso.

Así pues, por la controversia de autos ser una de estricto derecho, y el foro primario tener jurisdicción para atenderla, procede confirmar la determinación del Tribunal de Primera Instancia.

**IV**

Por los fundamentos que anteceden, se confirma la *Sentencia Parcial* apelada.

Lo acordó y manda el Tribunal, y certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones